ENDERS et al. v. LONGMIRE, Adm'r.

No. 26795.　March 9, 1937.

Rehearing Denied March 30, 1937.

Application for Leave to File Second Petition for Rehearing Denied April 27, 1937.

634

Butler & Brown, for plaintiffs in error.

Blanton, Curtis & Blanton and Marion Henderson, for defendant in error.

WELCH, J. Judgment of $2,500 was rendered in favor of plaintiff on verdict of the jury in the district court of Garvin county, Okla., for personal injuries causing death to William M. Longmire, Jr. While driving his car after midnight on August 15, 1934, he collided with a motor truck or semi-trailer owned and operated by the defendants, the holders of a certificate of public necessity and convenience theretofore issued by the Corporation Commission. Enders & Jackson and their bonding company were defendants below and will be so termed herein.

The original Oklahoma statute applicable to the operation of motor trucks and busses on the public highways was enacted by the 1923 Legislature, appearing substantially as sections 3692 to 3699, O. S. 1931.

The Special Session of the 1929 Legislature, in adopting chapter 253, amended and added to the aforesaid 1923 statute; the 1929 act appearing substantially as sections 3700 to 3713, inclusive, O. S. 1931. Section 4 of the 1923 act (section 3695, O. S. 1931) and section 6 of the 1929 act (section 3705, O. S. 1931) both provide it is unlawful for any motor carrier to operate or furnish service without first having obtained from the Corporation Commission a certificate declaring that the public necessity and convenience require such operation. Section 7 of the 1923 act (section 3697, O. S. 1931) and section 10 of the 1929 act (section 3708, O. S. 1931) are in the main substantially identical, providing that no certificate of convenience and necessity shall be issued by the Corporation Commission until a liability insurance policy or bond covering public liability and property damage shall have been filed, binding the obligor to make compensation for injuries to, or death of, persons, and loss or damage to property resulting from the operations of the motor carrier, for which it may be legally liable.

Section 3708, O. S. 1931 (being section 10 of the 1929 Act), was amended by Act of the Legislature approved April 12, 1933, which specifically repealed the 1923 law, appearing as sections 3692 to 3699, inclusive, O. S. 1931, and amended certain specified sections of the 1929 act.

This court has construed that portion of the 1923 act requiring a bond (section 7 of the 1923 act, or section 3697, O. S. 1931) in Temple v. Dugger, 164 Okla. 84, 21 P. (2d) 482, and in Jacobsen v. Howard, 164 Okla. 88, 23 P. (2d) 185. Defendants contend these two decisions are not decisive of the issues in this case because the 1923 act was the one in force when the causes of action arose in the Temple and Jacobsen Cases, and they therefore do not construe the appropriate provisions of the 1929 and 1933 acts.

To determine whether the case at bar is controlled by the two decisions aforesaid, it is necessary to compare the 1923, 1929, and 1933 statutes referring to liability under the motor carrier's bond. Section 7 of the 1923 act (being section 3697, O. S. 1931) is as follows:

"No certificate of convenience and necessity shall be issued by the Corporation Commission to any motor carrier until and after such motor carrier shall have filed with the Corporation Commission of this state a liability insurance bond in some company authorized to do business in this state in such a penal sum as the Corporation Commission may deem necessary to adequately protect the interest of the public, with due regard to the number of persons and amount of property involved, **which liability insurance shall bind the obligors thereunder to make compensation for injuries to persons and loss of or damage to property resulting from the operation of such motor carrier.**" (Emphasis ours.)

Section 10 of the 1929 act, so far as appropriate (being section 3708, O. S. 1931), is as follows:

"No certificate of convenience and necessity or permit shall be issued by the Corporation Commission to any motor carrier until after such motor carrier shall have filed with the Corporation Commission of this state a liability insurance policy or bond covering public liability and property damage, issued by some insurance or bonding company or insurance carrier authorized to do business in this state, which bond or policy shall be approved by the Corporation Commission of Oklahoma, and shall be in such sum and amount as fixed by a proper order of the Corporation Commission. **Said liability and property damage insurance policy or bond shall bind the obligor thereunder to make compensa-**

tion for injuries to, or death of, persons, and loss or damage to property resulting from the operation of any such motor carrier for which such carrier is legally liable. Provided, further, however, that the Corporation Commission may, in its discretion, relieve any motor carrier herein classified under class 'C' from the obligation of filing said public liability and property damage bond. A copy of such policy or bond shall be filed with the Corporation Commission, and after judgment against the carrier for any such damage, the injured party may maintain an action upon such policy or bond to recover the same and shall be a proper party so to do." (Emphasis ours.)

Section 3708, as amended by the Act approved April 12, 1933, c. 156, sec. 4, and so far as appropriate, is as follows:

"No certificate of convenience and necessity, or permit, shall be issued by the Corporation Commission to any motor carrier until after such motor carrier shall have filed with the Corporation Commission a liability insurance policy or bond covering public liability and property damage, issued by some insurance or bonding company or insurance carrier, authorized to do business in this state and which has complied with all of the requirements of the Corporation Commission, which bond or policy shall be approved by the Corporation Commission, and shall be in such sum and amount as fixed by a proper order of said commission; **and such liability and property damage insurance policy or bond shall bind the obligor thereunder to make compensation for injuries to, or death of, persons, and loss of damage to property, resulting from the operation of any such motor carrier for which such carrier is legally liable;** provided, that said commission may, in its discretion, relieve any motor carrier herein classified under class 'C' from the obligation of filing such public liability and property damage bond. A copy of such policy or bond shall be filed with said commission, and, after judgment against the carrier for any such damage, the injured party may maintain an action upon such policy or bond to recover the same, and shall be a proper party so to do." (Emphasis ours.)

We have emphasized that portion of the 1923 act under which this court in the Jacobsen Case, and in the Temple Case, held the bonding company may be sued jointly with the motor carrier. Likewise, we have underscored companion portions of the 1929 and 1933 acts.

Although there is a difference in the wording, we see no substantial change in the force and effect of the above statutes. In Jacobsen v. Howard, supra, where it was contended there was no joint liability on the part of the insurance company, we held the underscored (bold-face) portion of section 3697 imposed direct liability on the insurance company to the injured party, saying in the body of the opinion:

"The statute binds the liability insurance bond maker to make compensation for injuries to persons resulting from the operation of the bonded motor carrier."

And further:

"* * * Since that liability insurance bond is required to be filed with the Corporation Commission of the state by the motor carrier, the motor carrier is a party thereto as a matter of law. Under the statute the liability insurance bond maker is liable for the injuries resulting from the operation of the motor carrier, not by reason of its bond, but by reason of the statute, after it has filed its bond."

While there is some slight change in the wording of the first paragraph of section 3708, O. S. 1931, and of section 3708, as amended in 1933, from the one paragraph appearing as section 3697, O. S. 1931, and construed in the Temple and Jacobsen Cases, supra, yet such changes in no way alter or discount the applicability and binding force of the statements contained in the two cases, supra, to the effect that the statute creates a direct liability of the insurance company to the injured person. We hold the law announced in Temple v. Dugger and Jacobsen v. Howard is applicable to the 1933 amended statute involved in the case at bar, and therefore the plaintiff was entitled in his original action to join as defendants both the motor carrier and his statutory bondsman or surety.

This court, in a rather recent opinion, in Meshek v. Cordes, 164 Okla. 40, 22 P. (2d) 921, held subcontractor, principal contractor, and the principal contractor's surety could be joined in action for failure to pay for labor and material furnished to subcontractor on highway project; such conclusion being based, likewise, on statutory provisions, as was done in Temple v. Dugger and in Jacobsen v. Howard, supra. In the Meshek Case, as well as in the case at bar, and in the Temple and Jacobsen Cases, it was contended there was a misjoinder of parties because the surety or bonding company was joined with the principal defendant. This court in the Meshek Case said:

"The paramount and single purpose running through this action is to obtain and recover a judgment against said defendants by reason of the failure of the said defendants to pay for the labor and material which were furnished and used in the construction of this public improvement. There is no question but what plaintiff is entitled to re-

cover a judgment against each of the defendants for the labor and material which were furnished, under the allegations of his petition as against a demurrer, and that each of said defendants is connected with the purpose and object of the suit. Each defendant has an interest in the matters involved. * * *

"Each of these defendants has an interest in the subject of this action relative to payment of the claim of plaintiff."

We then proceeded in the Meshek Case to hold the surety company was an entirely proper party to the original action for damages. See, also, Graves v. Harrington, 177 Okla. 448, 60 P. (2d) 622.

It is contended, however, that the addition, in 1929, of the following clause:

"* * * And after judgment against the carrier for any such damage, the injured party may maintain an action upon such policy or bond to recover the same and shall be a proper party so to do"

—postpones the right of action of the injured party against the insurance company until after judgment has first been secured against the motor carrier.

In their brief the defendants below refer to certain legislative history of the 1933 act, showing that when the same was introduced in the House of Representatives one day after the filing of the opinion in Temple v. Dugger, supra, the above clause was omitted, but upon conference with the Senate, said provision was later reinserted and finally enacted; thereby concluding it was the legislative intent to restrict the injured party from suing the insurance company until after judgment had been first secured against the motor carrier.

With this contention we cannot agree. Since this court, in these two cases, supra, construed the section in question as creating a direct right of action in favor of an injured party against the motor carrier and its insurance company jointly, and with section 3708, as in force when the instant cause of action arose, being substantially identical with section 3697, O. S. 1931, therefore section 3708, after the 1933 amendment, should bear a like construction as under the two foregoing authorities unless there is a clear contrary intent on the part of the Legislature. Had the Legislature intended that a judgment against the carrier must exist before suing the insurance or bonding company, it would have been very simple for the Legislature to have provided in the 1929 or the 1933 amendment, as follows:

"Only if, and after, judgment is secured against the carrier for any such damage, the injured party may maintain an action upon said policy or bond to recover the judgment theretofore secured against the carrier."

No such amendment was adopted, nor anything like it in substance, and from the fact that neither the 1929 nor the 1933 Legislature substantially changed that part of said section upon which this court, in the two cases, supra, held a joint action may originally be maintained against the carrier and its insurance company, we can only assume there was no legislative intent to prevent an original joint action against both the carrier and its surety.

While we have not been furnished with any accurate legislative history of the "after judgment" portion of the act in question, it was very likely the intention of the Legislature to grant to the injured person, though not a party to the bond or insurance contract, the right to sue the insurance carrier directly and alone, if first a judgment had been recovered against the motor carrier. The Legislature possibly believed such clause necessary to entitle the injured plaintiff to step into the shoes of the assured and sue on the bond.

We have carefully considered the several authorities discussed by defendants in seeking reversal of the trial court. Those authorities involve statutory construction, but to be applicable here they must have construed statutes identical with ours, or statutes with sufficient similarity. Such we do not find to be the case. For instance, defendants strongly rely upon the Cannon Ball Freight Case, quoting from 59 S. W. (2d) 337. That case went to the Texas Commission of Appeals, which, in 1935, held that under the Texas statute the insurance carrier or bondsman could not be joined in the original action against the assured. The applicable portion of the Texas statute is as follows:

"* * * Which bonds and insurance policies shall provide that the obligor therein will pay, to the extent of the face amount of such insurance policies and bonds, all judgments which may be recovered against the motor carrier." Vernon's Ann. Civ St. Tex. art. 911b, sec. 13.

The first paragraph of the syllabus by the Commission of Appeals of Texas in Grasso v. Cannon Ball Motor Freight Lines, 81 S. W. (2d) 482, reads:

"Surety on bond furnished by motor carrier of freight as required by statute, could not be joined with insured in action by third party for injuries sustained due to insured's negligence, since statute makes surety liable

for payment of all **judgments** recovered against insured and not liable for payment of damages resulting from insured's negligence." (Emphasis ours.)

It is to be noted under the Texas statute the insurance company is held liable for all **judgments,** and such is the holding in the Cannon Ball Freight Case, while in Oklahoma the statute refers to injuries and not to judgments.

Without further discussion, the same criticism may be applied to other authorities of defendant—the statutes involved are different from ours; further, and as above stated, we believe we are bound by the Temple and Jacobsen opinions of our own court interpreting a statute which we believe is in effect identical with the 1933 amendment in force when the instant cause of action accrued.

Defendants urge other reasons for reversal of the judgment below, but in view of our conclusion that we are bound by the Temple and Jacobsen Cases, supra, such other contentions become immaterial. Defendants claim this action may not be maintained against the bonding company because of the "no action" clause appearing in the bond in question, providing that "no action shall lie against the company * * * to recover for any loss under this contract unless brought by the subscriber himself (the assured) in order to recover for any loss arising under clauses 'A' or 'B' of the special agreements (inclusive of the injuries sought herein to be recompensed) unless brought by the subscriber himself to recover for moneys actually paid by him in satisfaction of a judgment after trial of the issue in a suit instituted within the period limited by the statute of limitation. * * *"

We think that contention is foreclosed by Jacobsen v. Howard, supra, wherein we say:

"When a motor carrier files with the Corporation Commission a liability insurance bond as a prerequisite to the issuance to it of a certificate of convenience and necessity, and thereby procures the issuance of such a certificate by the Corporation Commission, neither it nor its liability insurance bondsman may successfully contend that its bond limits the liability imposed by the statute except as to amount. When it files its liability insurance bond with the Corporation Commission, the provisions of the statute are read into and become a part of that bond."

Further:

"The statute binds the liability insurance bond maker to make compensation for injuries to persons resulting from the operation of the bonded motor carrier."

Such being the case, the bond may not contravene the statute, and in case of conflict, the liability distinctly imposed by statute must be performed by the surety.

The judgment of the trial court is therefore affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and BUSBY, CORN, and HURST, JJ., concur. GIBSON, J., dissents. RILEY and PHELPS, JJ., absent.